**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | Case No. 11 CR 182 |
| v. | Hon. Harry D. Leinenweber |
| **MICHAEL LETOURNEAU,** | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Michael Letourneau's Motion *in limine*. For the reasons stated herein, the Court GRANTS the motion.

### I. BACKGROUND

On March 3, 2011, Defendant Michael Letourneau (hereinafter, "Letourneau" or "Defendant") was indicted for bankruptcy fraud in violation of 18 U.S.C. § 157(2). The indictment alleges that in November 2007 Letourneau defaulted on loans totaling approximately $1.4 million dollars and these loans were secured by his property located on 1900 Telegraph Road in Bannockburn, Illinois.

Allegedly in September 2008, one of Letourneau's lenders obtained a foreclosure judgment against him in the Lake County Circuit Court. This judgment authorized the sale of Letourneau's property in Bannockburn, Illinois. Pursuant to the judgment, in January 2009, the property was sold. Shortly after the sale, the

Lake County Circuit Court directed the Lake County Sheriff to evict Letourneau and take possession of his property on or after February 20, 2009.

The indictment alleges that Letourneau filed fraudulent bankruptcy petitions in an attempt to prevent the eviction. The indictment alleges that filing such petitions had the effect of invoking an automatic stay to collection activity by creditors against Letourneau's property.

Specifically, the indictment claims that on or about January 12, 2009, Letourneau transferred a 25% interest in the Bannockburn property to an individual who was a debtor in a bankruptcy case in the United States Bankruptcy Court for the Central District of California. Allegedly, Letourneau did this to cause an automatic stay since the individual to whom he transferred the interest had filed for bankruptcy in California.

On or about March 17, 2009, it is alleged that Letourneau filed an involuntary bankruptcy petition against himself in the United States Bankruptcy Court for the Central District of California, and sent a notice of this filing to the Lake County Sheriff to prevent the foreclosure sale.

The indictment then alleges that on or about March 19, 2009, Letourneau filed a second involuntary bankruptcy petition in the Northern District of Illinois. Allegedly, this petition listed the names of three of his friends which Letourneau claimed were

creditors, but Letourneau knew he did not owe these "creditors" any debts. (In order to file an involuntary bankruptcy petition, a petitioner must claim that he owes at least three creditors a minimum amount of money.) The indictment alleges Letourneau also sent this fraudulent filing to the Lake County Sheriff in order invoke an automatic stay to stop the foreclosure sale and eviction. Then, on or about April 14, 2009, it is alleged that Letourneau attempted to persuade one of the three "creditors" not to appear in United States Bankruptcy Court, despite the fact that this creditor received a notice to appear.

On March 3, 2011, Letourneau was arraigned for the aforementioned charges, pleaded not guilty, and was released on bond. On December 20, 2011, he filed a motion for additional discovery, which this Court granted.

In light of the new discovery, on August 29, 2012, Letourneau filed a motion seeking to admit reverse 404(b) evidence for his upcoming trial. The Government opposes the introduction of such evidence.

## II. **LEGAL STANDARD**

Judges have broad discretion when ruling on motions *in limine*. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, evidence may be excluded only when it is inadmissible on all potential grounds. *United States v. Caputo*, 313 F.Supp.2d 764, 767-68 (N.D. Ill. 2004). "Unless evidence meets

this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993).

### III. <u>**ANALYSIS**</u>

#### A. **Local Criminal Rule 47.1**

Prior to reaching the merits of Defendant's motion, the Court points out the Government's failure to abide by the Local Rules with respect to filing a timely response to Defendant's motion.

On August 30, 2012 (after Defendant presented his motion), the Court directed the Government to respond by September 22, 2012. ECF No. 37. Pursuant to an agreed motion, on September 21, 2012 the Court extended the Government's time to respond until September 27, 2012. ECF No. 38. However, on September 27, 2012, the Court again extended the deadline and granted the Government until October 11, 2012 to file its response. *See* ECF No. 40. At a status hearing on October 11, 2012, the parties agreed to move the Government's deadline once again, and the Court ordered the Government to respond by November 12, 2012. ECF No. 41. Despite these multiple extensions, the Government failed to file a response until November 14, 2012, two days beyond the final deadline the Court set. ECF No. 43.

Local Criminal Rule 47.1 provides "[f]ailure to file the reply brief within the requisite time shall be deemed a waiver of the

right to file." LCrR 47.1. While the Court acknowledges its ability to enforce the Local Rules strictly or overlook transgressions like the one here, the Court finds the Government's untimely response here particularly troublesome in part because of the multiple extensions and in part because the Government did not even attempt to provide a reason for it late filing in its response. In light of these actions, the Court could choose to ignore the Government's response entirely. However, because the Court does not find the response dispositive, the Court will consider the arguments contained therein. With respect to future filings however, the Court will strike all untimely filings.

**B. Defendant's Motion to Admit Reverse 404(b) Evidence**

In his motion, Defendant seeks to admit reverse 404(b) evidence. Defendant argues such evidence is admissible because it negates the Defendant's guilt and is relevant to Defendant's intent (or lack thereof).

Typically, Federal Rule of Evidence 404(b) is used to introduce evidence of a criminal defendant's prior misconduct. *United States v. Reed*, 259 F.3d 631, 634 (7th Cir. 2001). Pursuant to the Rule, the Government can introduce such evidence as proof of a motive or plan to commit the crime charged, but cannot use such evidence as proof of a defendant's propensity to commit crime. *See United States v. Seals*, 419 F.3d 600, 606 (7th Cir. 2005).

A defendant can also seek to admit evidence under Rule 404(b) if that evidence tends to negate the defendant's guilt of the crime charged. *United States v. Della Rose*, 403 F.3d 891, 901 (7th Cir. 2005). Such evidence is referred to as reverse 404(b) evidence. The Seventh Circuit instructs district courts to balance "the evidence's probative value under Rule 401 against considerations such as prejudice, undue waste of time, and confusion of the issues under Rule 403" to determine whether to admit a defendant's reverse 404(b) evidence. *Reed*, 259 F.3d at 634. A defendant is not held to as rigorous of a standard when seeking to admit reverse 404(b) evidence as the Government since prejudice to the Defendant is not at issue. *Seals*, 419 F.3d at 606.

Defendant seeks to introduce evidence of a pattern of criminal conduct from two individuals, Glifert Jackson and Muhammed Khan. Defendant argues this evidence supports the inference that Defendant was "duped" into filing his involuntary bankruptcies and this bolsters his "defense of lack of knowledge." Def.'s Mot. to Admit Reverse 404(b) Evid. at 11.

Letourneau claims that while he was engaged in additional discovery, he learned that the California "firm" which attempted to assist him in preventing his foreclosure had been involved in criminal activity. He contends that in 2009, this firm convinced him that it could help him keep his home and prevent the foreclosure. Letourneau claims that the firm instructed him to

transfer a 25% interest in his home to the firm's "non-profit" group and this would prevent the foreclosure. He submits that after this plan failed, the non-profit group filed for involuntary bankruptcy in California and listed Letourneau as the debtor and three individuals from the firm, Frank Maza, Zak Hussar, and Rana Meer, as creditors. Letourneau maintains this filing was done without his knowledge.

Letourneau also alleges that after the involuntary bankruptcy was filed in the Northern District of Illinois, the FBI in Chicago contacted the FBI in Los Angeles and learned that there were a number of involuntary bankruptcies filed in California that listed Maza, Hussar, and Meer as creditors. Letourneau claims the FBI in Los Angeles informed the FBI in Chicago it was investigating the two men in charge of the firm, Gilfert Jackson and Muhammed Khan, and recovered a document that listed Letourneau as a client of Jackson and Khan. The recovered document also lists a charge for $100.00 for the filing of an involuntary bankruptcy petition. In addition to this, the Los Angeles FBI recovered a fax cover sheet that was sent to the Lake County Sheriff regarding the involuntary bankruptcy filed in California on Letourneau's behalf.

Essentially, Defendant claims that Jackson and Khan participated in a scheme defraud owners of distressed properties and filed involuntary bankruptcies on behalf of their clients, at times without the client's knowledge. Apparently, Jackson was

indicted twice before in the Central District of California for bankruptcy fraud.

Letourneau argues he fell victim to this scheme and seeks to admit evidence that both Jackson and Khan engaged in a pattern of criminal conduct. Specifically, he seeks to call victims of Jackson and Khan to testify to similar acts of deception to support his defense.

While the Government argues that Defendant's proposed reverse 404(b) evidence lacks probative value, the Court disagrees.

The Government claims that Defendant's evidence has little probative value because Defendant does not assert "that evidence of the California investigation will tend to prove that he did not *file* the involuntary petition." Govt.'s Resp. at 8 (emphasis in original).

However, this argument ignores the elements the Government is required to prove in order for a jury to find Letourneau guilty of bankruptcy fraud. At trial, the Government must prove:

(1) a bankruptcy proceedings existed under Title 11 of the United States Code;
(2) the defendant made a statement relating to the proceedings;
(3) the statement was made under penalty of perjury;
(4) the statement related to a material matter;
(5) the statement was false; and
(6) the statement was made knowingly and fraudulently.

*United States v. Gellen*, 182 F.3d 578, 586 n.12 (7th Cir. 1999).

Defendant argues that his reverse 404(b) evidence will negate his guilt under Section 152 because it shows that he did not have

the requisite knowledge to be convicted of bankruptcy fraud. The Court finds this argument persuasive.

Moreover, the Court rejects the Government's contention that the probative value of Letourneau's evidence is "substantially outweighed by dangers or considerations enumerated in Rule 403." Govt.'s Resp. at 8. The Court does not find the evidence Letourneau seeks to admit will confuse a jury and the Court can limit the number of testifying witnesses so the evidence will not cause an undue delay.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendant Michael Letourneau's Motion to Admit 404(b) Evidence.

**IT IS SO ORDERED.**

                          Harry D. Leinenweber, Judge
                          United States District Court

Date:2/14/2013